Robert E. KNAPPENBERGER and Ruth Knappenberger, Plaintiffs,

v.

Frank E. BITTNER, Defendant.

Civ. A. No. 81–0735.

United States District Court,
W. D. Pennsylvania.

Oct. 27, 1981.

Russell H. Volkema, Columbus, Ohio, and Leann Kowalski, Pittsburgh, Pa., for plaintiffs.

H. A. Rosenberg, Pittsburgh, Pa., for defendant.

## MEMORANDUM

WEBER, Chief Judge.

This matter is a negligence action arising out of a motor vehicle accident. Certain issues have been raised by counsel for both parties which the court has ordered briefed. Those questions are: a) the applicability of Pennsylvania No-Fault Insurance, b) the existence of subrogation rights and the joinder of any real parties in interest under Fed.R.Civ.P. 17(a) and c) the deductibility of any workmen's compensation award from damages received in this action. We herein address these matters in the order stated above.

In this negligence action, defendant has raised the applicability of the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa.Stat.Ann. § 1009.101 et seq. (hereinafter No-Fault Act), as a defense to a portion of the damages sought by the plaintiff in connection with a motor vehicle accident occurring in Pennsylvania. This question is controlled by the decision of the Superior Court in *Toter v. Knight*, 278 Pa. Super. 547, 420 A.2d 676 (1980), and accordingly we hold that a non-resident victim

such as this plaintiff has a right to sue in tort for all items of damage, free from the provision of the No-Fault Act partially abolishing tort liability in Pennsylvania.

Plaintiff and his wife are residents of Ohio, a state which does not have a no-fault statute. The defendant is a resident of Pennsylvania. On August 20, 1979, plaintiff was driving a semi-truck on U.S. Route 30 in Jenner Township, Somerset County, Pennsylvania, when he collided with a vehicle operated by the defendant. Plaintiff has recovered workmen's compensation benefits from his employer's insurer under Ohio law for his injuries sustained in the collision.

Plaintiff instituted this suit for damages including wage loss and medical costs as a result of defendant's negligence. By Amended Answer, defendant contends that a portion of the damages claimed by the plaintiff in this suit must be recovered from some other party's insurer under the No-Fault Act. Plaintiff contends that the provisions of the Pennsylvania No-Fault Act do not apply to him as a non-resident victim, and if they do apply, he may waive any remedy thereunder and pursue a common law tort claim under the law of Ohio to recover the entire amount of damages. The holding in *Toter* is in accord with the plaintiff's position, and he may therefore forego the prescribed No-Fault remedies and maintain a tort claim for the full amount of his damages.

In *Toter*, a New Jersey resident was involved with a Pennsylvania resident in a motor vehicle accident in this state. Plaintiff alleged medical expenses exceeding $200, the applicable threshold figure in New Jersey's No-Fault statute. N.J.S.A. § 39:6A–8 (1973). Under that section a victim may only sue in tort for amounts in excess of the threshold figure.

The Pennsylvania No-Fault Act has a similar but distinctive provision in 40 Pa. Stat.Ann. § 1009.301(a). That section abolishes tort liability in Pennsylvania with specific exceptions. Section 1009.301(a)(5) permits suit in tort for medical expenses in excess of $750, a higher threshold than that provided in the New Jersey statute.

The plaintiff in *Toter* alleged medical expenses in excess of $200, the New Jersey threshold, but did not allege in excess of the $750 Pennsylvania threshold. The state trial court granted defendant's preliminary objections, believing § 1009.301(a) had abolished tort liability below the Pennsylvania Act's threshold amount in all instances. The Superior Court reversed, deciding that a non-resident plaintiff is accorded by § 1009.110(c)(2) the same rights to sue in tort as he enjoys in the state of his domicile, and that a non-resident's right to sue in tort is in no way abolished or limited by the provisions of § 1009.301(a).

In the instant case, plaintiff asserts his right to sue the defendant in tort for the full extent of his damages under § 1009.-110(c)(2) which states in pertinent part:

> (2) The right of a victim . . . to sue in tort shall be determined by the law of the state of domicile of such victim.

On the face of it, and without referring to § 1009.301(a), "Tort Liability: Partial Abolition", the above quoted section would appear to reserve to non-residents the same right to sue in tort as they enjoy in their home states irrespective of the application of other provisions of the Pennsylvania No-Fault Act. See also, *Dubose v. McCoy*, 277 Pa.Super. 149, 419 A.2d 705 (1980); *Flowers v. Smith*, 12 Pa.D.&C.3d 434 (1979). This is the holding of *Toter*, and we will therefor permit plaintiff in this case to proceed with his tort action for all items of damages without referring him to no-fault insurers for the threshold amounts.

While we apply here the rule espoused in *Toter*, we find the arguments of the dissent in that decision attractive in their application to the facts of this case. That dissent places special emphasis on an integral portion of the No-Fault Act, § 1009.301(a), which states in part:

> (a) Partial abolition.—Tort liability is abolished with respect to any injury that takes place in this state in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that:

(1) . . .

While the *Toter* dissent was concerned with the limitation in § 301(a)(5) of $750 medical costs, we are here primarily concerned with the work loss limitations of § 301(a)(4). The two sections are substantially alike in their effects on abolition of tort liability both preventing recovery of damages in tort for amounts below the threshold figures. *Zagari v. Gralka*, 264 Pa.Super. 239, 399 A.2d 755 (1979); 40 Pa.Stat.Ann. § 1009.202. The Pennsylvania Supreme Court has stated that the effect of § 1009.-301(a) is that a litigant retains common law tort remedies solely within the exceptions listed thereunder. *Singer v. Sheppard*, 464 Pa. 387, 398, 346 A.2d 897, 904 (1975). No distinction is made in this section between residents and non-residents, and no provision specifically exempts a non-resident's right of action in tort, nor has the Pennsylvania Supreme Court indicated such a distinction. The Court in *Toter* has read such an exception through its interpretation of § 1009.110(c)(2).

If, as the dissent in *Toter* suggests, the phrase "right of the victim . . . to sue in tort" in § 1009.110(c)(2) is defined in relation to the provision on abolition of tort liability, § 1009.301(a), and if the reasoning of the dissent is applicable to the limitations of § 301(a)(4) as well as § 301(a)(5), the result is a system in which residents and non-residents are treated alike for the purpose of determining benefits under the Act and the instances in which they may sue outside the operation of the Act. The only variance from this system is that victims from states with no-fault plans would collect benefits from that system, and that non-residents when permitted by § 1009.-301(a) to sue in tort would have the substantive law of their home state applied in any such action. This system envisioned by the *Toter* dissent appears to be consistent with the other provisions and purposes of the Act.

The No-Fault Act was intended to apply to and protect all persons injured on Pennsylvania highways unless otherwise covered by a no-fault plan. In § 1009.102(a)(3) the legislature states as its purpose, "the maximum feasible restoration of all individuals injured." Section 1009.201(a) provides:

(a) Accident within this State.—If the accident resulting in injury occurs in this Commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this Act.

Section 1009.110(c)(1), the sister provision to § 1009.110(c)(2) relied on by the majority in *Toter*, narrows the eligibility language of § 1009.201(a) but still specifically provides no-fault benefits under the Pennsylvania plan to non-resident victims such as the plaintiff whose domicile states have not enacted no-fault plans.

Perhaps the most telling provisions are those in § 1009.108 and § 1009.104. The former provides an "assigned claim" remedy to compensate all victims who are for some reason unable to collect insurance benefits from any other source. This plan protects all such persons injured in the Commonwealth, including non-residents who have not procured the proper insurance.

Section 1009.104 makes mandatory that every owner of a vehicle operating at any time on the highways of Pennsylvania carry specified minimum amounts of no-fault insurance coverage for that period of time when the vehicle is present in the state. This applies as well to non-resident owners of vehicles operated in Pennsylvania for any period of time, however short. *Greathouse v. Federal Kemper Insurance Co.*, 13 Pa.D. & C.3d 785 (1980). It is not easy to understand why with one hand the legislature would make such careful provision for the protection of non-resident victims through their inclusion in the assigned claims plan and the requirement that they carry minimum amounts of no-fault insurance, if with the other hand they intended to permit them a complete and unlimited remedy outside the Act. It appears to be somewhat anomalous to require one to carry no-fault insurance and then allow him to recover from an independent source damages covered by the insurance. The inter-

play of these sections may indicate that the legislature's purpose was to create a plan which is uniform in its operation on resident and non-resident victims alike as suggested by the *Toter* dissent.

While these considerations are attractive, we apply here the holding of the majority in *Toter* in accord with the deference we owe in a diversity case to a decision of a Pennsylvania Appellate Court, *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), and in the absence of any indication of a contrary position of the Pennsylvania Supreme Court. *Blake v. Kline*, 612 F.2d 718, 723 (3d Cir. 1979). Plaintiff may pursue his negligence claim against the defendant without being required to recover a portion of his damages under the No-Fault Act.

 The question has been raised as to whether plaintiff's employer's Worker's Compensation insurer must be joined as a real party in interest under Fed.R.Civ.P. 17(a). It is clear that no subrogation rights exist under the Ohio Worker's Compensation Law. Ohio Rev.Code Ann. § 4123.01 *et seq.* (Page): *Madrin v. Wareham*, 344 F.Supp. 166 (W.D.Pa.1972). Without subrogation, the insurer has no interest in these proceedings and need not be joined in this action.

The award of workmen's compensation benefits to plaintiff requires an examination of the collateral source rule. The question posed is whether benefits such as workmen's compensation must be deducted from any award received in this action, or whether plaintiff will be permitted "double dipping", that is full recovery of damages without deduction of the collateral benefits. Because by statute plaintiff's tort claim is governed by Ohio law, 40 Pa.Stat.Ann. § 1009.110(c)(2), we will look to Ohio's position on the collateral source doctrine.

In Ohio, workmen's compensation benefits are regarded as being in the nature of occupational insurance from which the tortfeasor should not receive a benefit. *Dearhouse v. Bethlehem Steel Co.*, 118 F.Supp. 936, 939 (N.D.Ohio 1954). The settled Ohio collateral source rule then is that in a negligence action against a third-party tortfeasor, the workman is entitled to recover the full amount of damages sustained without deducting awards under the Worker's Compensation Law. *Truscon Steel Co. v. Trumbull Cliffs Furnace Co.*, 120 Ohio St. 394, 166 N.E. 368 (1929); *McDowell v. Rockey*, 32 Ohio App. 26, 167 N.E. 589 (1929); *Dearhouse*, supra, 118 F.Supp. 936; *Powell v. Wagner*, 178 F.Supp. 345 (E.D.Wisc. 1959); 58 O.Jur.2d, Workmen's Compensation § 20.

In summary, and for the reasons stated above: a) plaintiff is not required to pursue no-fault remedies for threshold amounts and may maintain a tort action in accord with Ohio law for the full amount of damages; b) no subrogation rights exist and no additional parties need be joined under Fed. R.Civ.P. 17(a); and c) Ohio Worker's Compensation is a collateral source and is not to be deducted from any award for damages received in this action.